### T. R. CAMERON v. THE STATE.

#### No. 59.    Decided November 24, 1909.

**Assault to Murder—Continuance—First Application.**

Where, upon trial for assault with intent to murder, the defendant presented his first application for continuance in due time, and exercised proper diligence to obtain the attendance of the absent witness, and the testimony of the absent witness consisted of communicated threats by the injured party against the defendant, insulting language, etc., the continuance should have been granted, although defendant himself testified to said threats, the testimony in the case being very close as to whether the assault was made with intent to murder.

Appeal from the District Court of Medina. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*James H. Robertson,* for appellant.—On question of the court's action in overruling defendant's first application for continuance and motion for new trial: Harris v. State, 18 Texas Crim. App., 287; Roach v. State, 21 Texas Crim. App., 249; Eldridge v. State, 12 Texas Crim. App., 208; Irvine v. State, 20 Texas Crim. App., 12; McAdams v. State, 24 Texas Crim. App., 86.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault to murder, and his punishment assessed at five years confinement in the penitentiary.

The assault was alleged to have been committed upon Milford Berry. The evidence, in brief, shows that there had been an ill-feeling between the parties, and that Berry had been insulting and grossly so to appellant. The witness Woschlegel stated that Berry came to his store and told him he wanted to see appellant, because appellant had been telling lies on him, and he would make appellant take them back or he would take it out of him. That he was tired of his talking about him, and left the store with the remark that he would go look for appellant. That Berry was mad. Clements testified that Berry had been unfriendly towards appellant for more than a year prior to the difficulty. Mask testified that on one occasion in June, 1908, Berry came to his store and asked him if he had seen appellant. He stated he wanted to see appellant as appellant had been telling lies on him, and he wanted to make him take them back or he would take it out of him. He seemed to be very angry. The witness Hurt testified that the evening before the difficulty appellant was walking along the sidewalk but said nothing to Berry. Berry said to appellant, "Go to hell, see if you can hear that." Appellant looked around and walked on. Berry on cross-examination stated that on the evening before the difficulty appellant passed him and he asked appellant if he, appellant, wanted a job. Appellant made no reply. Witness then said to him, "Come help me carry brick up there." Appellant made no reply, and Berry said, "Go to hell, see if you can hear that." He admitted being unfriendly towards appellant for a long time, and denied none of the statements imputed to him. Appellant testified in his own behalf, and stated that the statements testified by the other witnesses were communicated to him; and further that prosecuting witness Berry had been angry with him and used insulting language towards him

for a long time, and on one occasion in front of the Mercantile Company Berry had cursed him, and he, appellant, did not reply to it, but passed on, and again at Holloway's gin Berry had cursed him in the presence of Frank Holloway, but on that occasion appellant passed on and made no reply. That he, appellant, went down to Woschlegel's store one time and he told him, appellant, that Berry had been there, and he, appellant, went home in order to avoid trouble. That at the Mercantile Company Berry cursed him and said to him, "Go to hell, you damn skunk." That at the gin Berry asked him if he "had them spells often" and appellant made no reply, and Berry then said, "Go to hell, see if you can hear that." That on one morning he passed the building where Berry was at work and Berry asked him if he wanted a job, and to this appellant made no reply. Berry then said, "Go to hell, I guess you can hear that." Appellant moved on and did not stop. That on the day following the incident just mentioned appellant passed along and Berry said to him: "Good morning, you damn old son-of-a-bitch, I wonder if you can hear that." Appellant then told him he could not take that and struck him. That he did not intend to kill him, but wanted to make him leave him alone. That this conduct continued from June, 1908, down to the time of the difficulty. Appellant says he had been informed by Holloway that Berry had stated to him, Holloway, that he intended to kill appellant. Appellant is a man 54 years of age, and Berry is a young man.

1. The question discussed is the refusal of the court to grant a continuance. The alleged absent witness is Frank Holloway, mentioned in statement above. It was the first application, and the diligence we think is ample. The indictment was returned on the 21st of April. The process was issued on the 24th of April, and the return was made by the sheriff on the same day showing that Holloway was at the time out of the county. The judgment was entered on 29th of April. The facts expected to be shown by the absent witness are thus stated: Frank Holloway would swear that prosecuting witness Milford Berry told him that he expected to kill defendant if he ever got a chance, and that said threat was communicated to appellant by Holloway. That this threat was made just a short time before appellant is alleged to have committed the assault upon Berry. That at another time this witness will swear that he heard Berry curse and abuse defendant in hearing of defendant a short time prior to the alleged assault, and subsequent to the threat to take defendant's life. That the language used by the prosecuting witness was as follows: "Damn you, do you have them spells often," and that appellant then started to walk on and that the prosecuting witness further said, "Then go to hell, damn you." The immediate facts attending the assault are about these: Appellant was passing near where Berry was at work carrying bricks to be placed in a building that was being erected, and Berry made the remarks testified to such as, "Go to hell,

you God damn son-of-a-bitch," etc., and that he, appellant, immediate-
ly stuck his knife in him.   Berry ran, appellant threw a brick or
a piece of brickbat at Berry and Berry threw brick at him, ap-
pellant.   The knife is not shown to have been a deadly weapon,
but is a pocketknife.   We are of opinion, under the circumstances, a
continuance should have been granted.   Threats to take the life of
appellant under the circumstances of this case might have had a con-
siderable bearing in the minds of the jury, and was material testimony,
especially in view of the extreme insulting language used by Berry at
the time of the assault upon him.   Appellant testified, it is true, that
the threat had been communicated to him, but Holloway would have
corroborated appellant upon that phase of the testimony as well as
in regard to the other remark that Berry is charged with having
made in the presence of Holloway.   Holloway was, therefore, a very
important witness.   The testimony places the case within very close
lines as to whether it could be an assault with intent to murder.   The
evidence sought would have been important as affecting the punish-
ment which the jury would assess.   We are, therefore, of opinion this
application for continuance should have been granted.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Brooks, Judge, absent.